

FILED

DEC 2 6 2006

CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KENNETH WILSON,

                 Plaintiff,                       Case Number: 05-72994

v.                                     JUDGE PAUL D. BORMAN
                                          UNITED STATES DISTRICT COURT

UNICARE CORPORATION,

                 Defendant.

_____/

## OPINION AND ORDER: (1) DISMISSING THE CASE DUE TO LACK OF SUBJECT MATTER JURISDICTION; AND (2) REMANDING THE CASE TO STATE COURT

Now before the Court is Defendant's Motion for Summary Judgment (Dock. No. 8). The Court held a motion hearing on October 25, 2006. Having considered the entire record, and for the reasons that follow, the Court DISMISSES the case due to lack of subject matter jurisdiction and remands the case to state court.

## I.    FACTS

Plaintiff Kenneth Wilson ("Plaintiff") is an individual and a resident of Michigan. (Compl. ¶ 1). Defendant is a foreign corporation doing business in Michigan. (Answer ¶ 2). In June of 1976, Plaintiff began his employment with Ford Motor Company ("Ford"). (Compl. ¶ 5). As part of Plaintiff's employment with Ford, he received sickness and accident benefits under the Ford Employee Benefit Plan (the "Plan"). (Compl. ¶ 6).

On August 26, 1988, Plaintiff became disabled as a result of a car accident which was unrelated to his employment. (Pl.'s Resp. 2-3). Plaintiff submitted a claim for sickness and

1

accident benefits with Defendant's predecessor, John Hancock, who administered Ford's

benefits. (Pl.'s Resp. Ex. 1, Report of Claim form). On August 29, 1990, Plaintiff was found

able to work by a medical examiner for John Hancock. (Pl.'s Resp. 3). John Hancock stopped

paying Plaintiff's sickness and accident benefits as a result of the medical examiner's finding on

that date. (*Id.*). After losing his sickness and accident benefits, Plaintiff was placed on "no work

available" status with Ford, from August 30, 1990 until July 16, 1996. (*Id.*).

On November 22, 1993, the Social Security Administration ("SSA") ruled in Plaintiff's

favor on appeal and found that he was entitled to disability insurance benefits since October 25,

1988.[1] (Pl.'s Resp. Ex. 5, SSA Appeals Opinion). On February 12, 1994, the SSA informed

Plaintiff that he was entitled to monthly disability benefits from Social Security beginning

November 1990. (Pl.'s Resp. Ex. 6, SSA Letter 2/12/94). Plaintiff contends that he did not

receive sick and accident benefits at the same time he received Social Security benefits, *i.e.*, he

did not receive retroactive payment for Social Security benefits for the time period of November

1990 until February 1994. (Pl.'s Resp. Ex. 3, Wilson Aff. ¶¶ 10, 11).

The Plan states that accident and sickness benefits, as well as extended disability benefits,

are offset by the amount an employee receives in Social Security Disability Benefits. (Def.'s Br.

Ex. 2, The Plan 124). The Plan provides:

> If Social Security Disability Benefits are awarded, your Accident and Sickness
> benefits will be reduced by the amount of the primary Social Security benefit
> which you actually receive. Any benefits paid to you prior to a Social Security
> determination, which are later determined not to be payable because of a Social

---

[1] Plaintiff applied for Social Security benefits at the direction of John Hancock. (Pl.'s
Resp. Ex. 3, Wilson Aff. ¶ 7). The application and the appeal were handled by a John Hancock
representative. (Pl.'s Resp. Ex. 3, Wilson Aff. ¶ 8). Plaintiff's application was apparently
denied, and he requested a hearing to reconsider the denial.

2

Security award, are an overpayment which must be repaid. If not repaid within 30 days, future Accident and Sickness (and Extended Disability Benefits if necessary) will be suspended until the overpayment is recovered.

(*Id*.).

On March 29, 2004, Plaintiff received a letter from Defendant stating that he had been overpaid benefits. (Pl.'s Resp. Ex. 10, UniCare Letter 3/29/04). According to Defendant, "benefits were paid for days of disability after [Plaintiff] returned to work. [Plaintiff] returned to work on 7/15/96 and benefits were withheld through 12/31/02." (*Id*.). Defendant claims that John Hancock determined the Plan had overpaid Plaintiff's disability benefits between November 1990 and February 1994 by $39,072.24. (Def.'s Br. 3).

Plaintiff believes that Defendant began taking deductions from Plaintiff's paychecks and income tax refund based on the alleged overpayment beginning sometime in 2004. (Pl.'s Resp. 5). Defendant contends that pursuant to the Plan, John Hancock and then Defendant suspended payment of Plaintiff's disability benefits – to recover the overpayment - from March, 1994 through December 31, 2002. (Def.'s Br. 3).

On July 15, 1996, Defendant alleges that Plaintiff returned to work.[2] (Def.'s Br. 3). Defendant and its predecessor were unaware that Plaintiff returned to work. (*Id*.). It is Defendant's contention that Plaintiff's disability benefits continued to be processed by Defendant even though he was now working and not entitled to the benefits. (*Id*.).

Defendant learned that Plaintiff returned to work on July 15, 1996, in March 2004. (*Id*.). Defendant then recalculated Plaintiff's benefits to reflect that no disability benefits were withheld

---

[2] The Court presumes that Defendant means Plaintiff was removed from "no work available" status and began actually working.

3

after he returned to work.  (*Id.* at 4).  Defendant then notified Plaintiff that an overpayment

balance remained in the amount of $27,687.77.  (*Id.*).  When Plaintiff did not reimburse Ford for

the overpayment, Ford made deductions from Plaintiff's paychecks.  (*Id.*).

On May 3, 2004, Plaintiff's counsel requested documentation from Defendant which

supported their argument of an overpayment.  (Pl.'s Resp. Ex. 11, Letter to Defendant 3/3/04).

Plaintiff claims that Defendant failed to respond to his request.  (Pl's Resp. 4).

As a direct result of the deductions, Plaintiff filed his Complaint in Wayne County Circuit

Court on July 2, 2005.  (Pl.'s Resp. 5).  Plaintiff sought damages because "Defendant was taking

his money without permission[,] in violation of Michigan law."  (*Id.*).  Defendant was served via

certified mail on July 8, 2005.  (Notice of Removal ¶ 2, Docket No. 1).  Defendant removed the

case to this Court on August 2, 2005.

On February 10, 2006, Plaintiff served Defendant with a Request for Production of

Documents seeking documentation supporting Defendant's claimed overpayment.  (Pl.'s Resp.

Ex. 12, Def.'s Resp. to Pl.'s Request for Production of Documents).  Defendant informed

Plaintiff that all bank records, including all checks, front and back, from Defendant to Plaintiff

that were overpayments to Plaintiff, were purged after seven years.  (*Id.*).

Defendant filed the instant Motion for Summary Judgment on August 1, 2006.  Plaintiff

filed his response on September 11, 2006.  Defendant replied on September 26, 2006.  Plaintiff

filed an amended response on September 26, 2006.

Defendant argues that Plaintiff's lawsuit is governed by the Employment Retirement

Income Security Act ("ERISA").  Defendant contends that Plaintiff is making a claim for

disability benefits under the Plan and thus the Plan constitutes an Employee Welfare Plan under

4

ERISA. Defendant further asserts that Plaintiff's state law claim is pre-empted under ERISA.
Defendant avers that Plaintiff did not exhaust his administrative remedies and therefore his
Complaint should be dismissed. Defendant believes that Plaintiff's claim can be brought, if at
all, under ERISA's civil enforcement provision,. Under that provision, Defendant contends that
Plaintiff's claim should have been brought against Ford or the benefit plan. Finally, Defendant
argues that Plaintiff's claim is barred by the employee benefit plan's statute of limitations.
However, Defendant specifically contends that any claim Plaintiff may make for benefits under
29 U.S.C. § 1132 resulting from the deduction of Social Security between 1994 and 1996 is time-
barred under the terms of the plan.

Plaintiff responds that Defendant's arguments are all based on the erroneous conclusion
that his claim involves ERISA violations and is therefore barred by ERISA's provisions.
Plaintiff argues that his claim does not seek recovery of benefits, enforcement of benefit rights,
or clarification of future benefit rights under an ERISA plan. Plaintiff believes that this Court
lacks subject matter jurisdiction.

Defendant replies that Plaintiff filed his Complaint alleging that his income was wrongly
converted by Defendant. The conversion originated from the overpayment of disability benefits
by Ford to Plaintiff. Defendant argues that the overpayment deductions were made pursuant to
the Plan and thus subject to ERISA. Defendant asserts that Plaintiff did not challenge this
Court's ERISA jurisdiction after the filing of the Notice of Removal, nor did Plaintiff raise the
issue in a response to the Court's Order to Show Cause or to Defendant's Response to that order.
Defendant avers that the only justification allowing Ford to offset sums of money from Plaintiff's
income arose solely form the terms and conditions of the Plan, and thus Plaintiff's state law

5

claim is pre-empted by ERISA.

## III.    ANALYSIS

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim,

counterclaim, or cross-claim is asserted may "at any time, move with or without supporting

affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ.

P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no

genuine issue of material fact as to the existence of an essential element of the non-moving

party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> Of course, [the moving party] always bears the initial responsibility
> of informing the district court of the basis for its motion, and
> identifying those portions of "the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact.

*Id*. at 323; *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that

fact "would have [the] effect of establishing or refuting one of the essential elements of a cause

of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984) (quoting BLACK'S LAW DICTIONARY 881 (6th ed. 1979)) (citations omitted). A dispute

over a material fact is genuine "if the evidence is such that a reasonable jury could return a

verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986). Conversely, where a reasonable jury could not find for the non-moving party, there is no

6

genuine issue of material fact for trial. *Id.*; *Feliciano v. City of Cleveland*, 988 F.2d 649, 654

(6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all

reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d

1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a

showing that is "sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial" will mandate the entry of summary

judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere

allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in

Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial.

FED. R. CIV. P. 56(e). The rule requires that non-moving party to introduce "evidence of

evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of

Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the

non-moving party must produce more than a scintilla of evidence to survive summary judgment).

### B.    Discussion

#### 1.    ERISA Subject Matter Jurisdiction

This Court's initial concern is whether this case was properly removed from state court.

Defendant states in its notice of removal that Plaintiff's lawsuit is governed by ERISA.

> [ERISA] . . . subjects to federal regulation plans providing employees with fringe
> benefits. ERISA is a comprehensive statute designed to promote the interests of
> employees and their beneficiaries in employee benefit plans. The term "employee
> benefit plan" is defined as including both pension plans and welfare plans. The
> statute imposes participation, funding, and vesting requirements on pension plans.
> It also sets various uniform standards, including rules concerning reporting,
> disclosure, and fiduciary responsibility, for both pension and welfare plans.

ERISA does not mandate that employers provide any particular benefits, and does not itself proscribe discrimination in the provision of employee benefits.

*Shaw v. Delta Air Lines*, 463 U.S. 85, 90 (1983). ERISA specifically provides that:

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident . . . .

29 U.S.C. § 1002(1).

It is clear that the benefits provided by Ford through Defendant and its predecessor are governed by ERISA. The Plan was maintained by Ford for the purpose of providing its participants sickness and accident benefits. However, the issue in the instant case is not whether the Plan is an employee welfare benefit plan and thus subject to ERISA. The issue is whether Plaintiff's Complaint can be interpreted to include a possible action under ERISA's civil enforcement provision. Plaintiff contends that he is not challenging any decision that Defendant or its predecessor made regarding entitlement to disability benefits. Plaintiff argues that he does not seek to recover benefits, enforce rights to benefits, or clarify rights to future benefits. Thus, Plaintiff claims he is not bringing a cause of action under ERISA's civil enforcement provision. Plaintiff asserts that he only wants Defendant to provide the documentation from which it determined that an overpayment had accumulated.

ERISA's civil enforcement provision, allows a participant or beneficiary in a plan covered by ERISA to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits

under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).  A participant, beneficiary, or fiduciary

may also bring a civil action under ERISA to "(A) enjoin any act or practice which violates any

provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief

(i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the

plan." 29 U.S.C. § 1132(a)(3)(A), (B).

　　　　The Court finds that Plaintiff's claim is not covered by 29 U.S.C. § 1132(a)(1)(B).

Plaintiff is not challenging Defendant's interpretation of disability insurance coverage, the denial

of benefits, or the processing of benefits.  Nor is Plaintiff bringing this action to recover benefits,

enforce his rights, or clarify his rights to future benefits, under the terms of the plan.  Plaintiff's

Complaint contends that Defendant's bookkeeping errors created an alleged overpayment which

never occurred.  Thus, Plaintiff believes that Defendant cannot document any alleged

overpayments because no overpayment exists.  Plaintiff is only arguing that Defendant took

money from him without permission or right, in violation of Michigan law.

　　　　Additionally, Plaintiff's claim is not covered by 29 U.S.C. § 1132(a)(3)(A) or (B).  The

reduction in payment of Plaintiff's disability benefits, *i.e.*, deductions from Plaintiff's paychecks

and income tax refund, about which Plaintiff complains, was undertaken to correct an ongoing

alleged violation of the plan – overpayment of benefits to Plaintiff – not to violate the plan itself.

Plaintiff simply believes that an overpayment did not occur, and argues Defendant has not

provided him with evidence to support its believe of an overpayment.

> Section 1144 is the ERISA preemption provision; it provides that ERISA "shall
> supersede any and all State laws insofar as they may now or hereafter relate to any
> employee benefit plan . . . ."  Section 1132 is the civil enforcement provision.  "A
> civil action may be brought . . . by a participant or beneficiary . . . to recover
> benefits due to him under the terms of his plan, to enforce his rights under the

9

> terms of the plan, or to clarify his rights to future benefits under the terms of the
> plan." In *Warner* [*v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1995)], we held that
>> Section 1144 allows ERISA to preempt state laws when they
>> "relate to" matters governed by ERISA but does not create a
>> federal cause of action for matters which only "relate to" ERISA's
>> field of concern. Thus, § 1144 preemption does not create a federal
>> cause of action itself, and cannot convert a state cause of action
>> into a federal cause of action under the well-pleaded complaint
>> rule. As a consequence, no removal jurisdiction exists under §
>> 1144. . . .
>>
>> However, State causes of action *not covered* by § 1132(a)(1)(B)
>> may still be subject to a preemption claim under § 1144(a) . . .
>> because the state law at issue may "relate to" a pension or
>> employee benefit plan. *But such actions are not subject to removal.*
>> Removal and preemption are two distinct concepts. "The fact that
>> a defendant might ultimately prove that a plaintiff's claims are
>> pre-empted" – for example under § 1144(a) – "does not establish
>> that they are removable to federal court." The federal preemption
>> defense in such nonremovable cases would be decided in state
>> court. . . .

*Zuniga v. Blue Cross and Blue Shield of Mich.*, 52 F.3d 1395, 1399 (6th Cir. 1995) (emphasis

added) (citations omitted). A law "relates to" an employee benefit plan, in the normal sense of

the phrase, if it has a connection with or reference to such a plan."[3] *Shaw v. Delta Airlines*, 463

U.S. 85, 96-97 (1985). In the instant case, Plaintiff's claim is not covered by § 1132(a)(1)(B).

Therefore, the Court should find that this case is not governed by ERISA and its removal

was improper under *Warner*. None of ERISA's civil enforcement provisions apply to the case at

bar. While Plaintiff's claim may "relate to" ERISA, because the funds were deducted from

Plaintiff's paycheck and tax refunds based upon the belief of a benefit plan overpayment,

---

[3] The Supreme Court has held that common law causes of action, such as tortious breach
of contact, breach of fiduciary duties, and fraud in the inducement – which are based on an
improper processing claim for benefits under an employee benefit plan – "relate to" an employee
benefit plan and meet the ERISA criteria. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987).

10

Defendant has not provided this Court with any evidence of an overpayment – it contends that all bank records, including all checks, front and back, from Defendant to Plaintiff were purged.

This case is simply one where Plaintiff alleges money was improperly taken from him due to Defendant's error in believing it overpaid benefits, and since Defendant has not produced any evidence of actual ERISA benefits overpayments, the Court cannot find that ERISA was involved.

Defendant replies that Plaintiff did not challenge the Court's ERISA jurisdiction: (1) when the case was removed; or (2) anytime subsequent to the Court's Order to Show Cause or Defendant's response to the Order. Defendant avers that because Plaintiff failed to take advantage of two prior opportunities, Plaintiff's argument is without merit. The Court does not find Defendant's argument persuasive. 28 U.S.C. § 1447(c) states that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." Accordingly, as the Court finds that ERISA does not apply to Plaintiff's cause of action and that the case should be remanded to state court.[4]

## III.   CONCLUSION

For the reasons stated, the Court DENIES Defendant's Motion for Summary Judgment. Additionally, the Court hereby REMANDS Plaintiff's claim to state court.

**SO ORDERED.**

Dated:  /2-26-06

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____

[4] Since the Court finds that ERISA does not apply to Plaintiff's cause of action, the Court does not need to address Defendant's additional arguments: that ERISA preempts state-pled claims, that Plaintiff failed to exhaust his administrative remedies under ERISA, that Plaintiff's claim is time-barred under ERISA, and that Plaintiff's claims were brought against the incorrect party.

11